990 F.2d 381
 Ernest F. WALTERS, Appellant,
v.
Paul GROSSHEIM; Charles Lee; John Sissel; John Thalacker;
Scott Francik; Larry Brimeyer; C/O Richmond, Appellees.
Ernest F. WALTERS, Appellee,
v.
Paul GROSSHEIM; Charles Lee, Appellants,
John Sissel, Defendant,
John Thalacker, Appellant,
Scott Francik; Larry Brimeyer; C/O Richmond, Defendants.
 Nos. 92-1766, 92-1941.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 28, 1992.
Decided April 1, 1993.
 
 Ernest F. Walters, pro se.
 Layne M. Lindebak, Des Moines, IA, for appellees.
 Before FAGG, BOWMAN, and WOLLMAN, Circuit Judges.
 BOWMAN, Circuit Judge.
 
 
 1
 Ernest F. Walters, an Iowa prisoner, appeals from the judgment of the District Court[1] awarding him compensatory damages in his 42 U.S.C. § 1983 (1988) action. Walters argues that the District Court's award of compensatory damages was insufficient and that the court erred by not awarding him punitive damages. Defendants Paul Grossheim, Charles Lee, and John Thalacker, Iowa prison officials, cross-appeal from the judgment, arguing that they were entitled to qualified immunity and that the damages award against them therefore cannot stand. We affirm the judgment of the District Court.
 
 
 2
 In June 1988, correctional officer Richmond wrote a disciplinary report against Walters charging him with making a false statement to a visiting-room guard concerning his status in the level-incentive program, that status being relevant to the privileges he was entitled to have while in the visiting room. Assistant Warden John Sissel, a defendant in two of Walters' then-pending suits, and Grievance Officer Larry Brimeyer sat on the disciplinary hearing committee. Upon finding Walters guilty of the charge, the committee imposed two days of disciplinary detention, ordered a reduction of Walters' status from Level IV to Level III, and revoked four days of good-time credit. Warden John Thalacker, also a defendant in pending litigation initiated by Walters, denied the appeal from the decision. Thalacker determined that Sissel's participation in the hearing did not violate Walters' due process rights because Sissel had not been involved in writing or investigating the disciplinary. Thalacker also determined that testimony from a witness Walters had discovered after the hearing was unnecessary.
 
 
 3
 A disciplinary committee later found Walters guilty of possessing cigarettes while in disciplinary detention in violation of prison rules and imposed two more days in detention and thirty days in Level II. Thalacker denied Walters' appeal from this decision. After thirty days in Level II, Walters was placed in Level III. Because Walters is serving a life sentence, prison regulations required him to spend one year in Level III without disciplinary sanction before he could return to Level IV.
 
 
 4
 In September 1988, Walters filed a postconviction action in state court against the State of Iowa, Sissel, Brimeyer, and Richmond. He claimed that, because of Sissel's bias, he did not receive a fair hearing concerning his June 1988 disciplinary and that, on appeal, he was denied the opportunity to present a witness. He requested reversal of the committee's decision, expunction of the disciplinary from his record, restoration of his good-time credit, and placement in Level IV.
 
 
 5
 On November 30, 1988, the state court entered a default judgment against the defendants. The court ordered the prison officials to expunge the disciplinaries, restore Walters' good-time credit, and reinstate him to Level IV. The defendants moved to set aside the judgment and, although the judgment had not been stayed, did not comply with it. In January 1989, Walters moved to hold the defendants in contempt. On February 6, 1989, the defendants abandoned their motion to set aside the judgment; they complied with the judgment, and Walters abandoned his contempt motion. Walters thus was returned to Level IV on February 6, 1989.
 
 
 6
 In July 1989, Walters filed this section 1983 action for damages, claiming, among other things, that defendants' delay of over two months in returning him to Level IV following the entry of the November 30, 1988 state court judgment deprived him of a protected interest. He requested compensatory and punitive damages and costs. Defendants denied Walters' allegations and contended they had acted in good faith.
 
 
 7
 Following an evidentiary hearing, a magistrate judge recommended rejection of Walters' claims on the merits. Walters objected, essentially reasserting the claims he had already asserted, and arguing for the first time that defendants' action in failing to comply with the state court order to return him to Level IV violated Iowa R.Civ.P. 236,[2] and that their unlawful refusal to comply with the order had deprived him of a protected liberty interest without due process of law.
 
 
 8
 Upon de novo review, the District Court held that the state court default judgment gave Walters a liberty interest in being restored to Level IV, which is less restrictive than Level III, and that this liberty interest is protected by the Due Process Clause of the Fourteenth Amendment. The District Court also held that defendants Grossheim, Lee, and Thalacker were bound by state law to obey the state court default judgment, absent a stay of that judgment. In denying qualified immunity, the court found that these defendants were aware of the judgment and should have known that an unstayed order of a court must be obeyed, and that their failure to follow the directives of the state court order, even if the defendants believed the order to be wrong and appealable, was objectively unreasonable.
 
 
 9
 Based on the violation of Walters' liberty interest resulting from the refusal of these defendants to implement the state court judgment, the court awarded Walters actual damages of $4 a day for time spent in the more restrictive environment of Level III after entry of that judgment and before Walters was restored to Level IV, a total of $276. Punitive damages were denied for lack of evidence to support an award of such damages.
 
 
 10
 Walters argues that the compensatory damages award is inadequate and that the District Court erred by not awarding him punitive damages because defendants Grossheim, Lee, and Thalacker deliberately disregarded his constitutional rights. In their cross-appeal, Grossheim, Lee, and Thalacker argue that the court erred in holding that they violated Walters' due process rights when they refused to obey the state court order. Defendants also argue that in any event they were entitled to qualified immunity because, even if their refusal to obey the state court judgment violated state law, they cannot be held liable under section 1983 unless they violated a clearly established constitutional right.
 
 
 11
 We deal first with defendants' cross-appeal. They contend that it was objectively reasonable to not comply with the state court judgment, thus they were entitled to qualified immunity. They argue that their actions were objectively reasonable because they are prison officials and cannot be expected to know the basic rules concerning the effect of unstayed judgments, and because they relied on the advice of counsel for the state who, because of the filing of the motion to set aside the default judgment, advised them not to comply with the judgment. We are not persuaded by this argument.
 
 
 12
 The District Court found that Grossheim, Lee, and Thalacker are not unsophisticated litigants, and that they reasonably should have known they were under a duty to obey the unstayed state court judgment, even if they disagreed with it and thought it was subject to challenge. The court recognized that although following the advice of counsel bears on the reasonableness of the defendants' conduct, it does not automatically cloak them with qualified immunity; considering all the circumstances, the court determined that defendants' decision not to comply with the judgment was not objectively reasonable.
 
 
 13
 We are satisfied that the District Court's ruling on the qualified immunity issue is faithful to the principles of Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), and must be sustained. Our conclusion that qualified immunity was correctly denied is bolstered, and indeed made almost inevitable, by the recent decision of this Court in Slone v. Herman, 983 F.2d 107 (8th Cir.1993).
 
 
 14
 In Slone, as here, the defendants were state officials who had refused to obey an unstayed state court order that conferred a liberty interest upon the plaintiff, a state prisoner. There, as here, the defendants, or at least some of them, contended they were protected by qualified immunity because in refusing to comply with the order they relied on the advice of counsel. There, as here, the defendants disagreed with the order and thought it lacked a proper legal foundation. Applying Harlow and Anderson, we affirmed the district court's denial of qualified immunity and remanded the case for trial. In so doing, we emphasized that "[a] reasonably competent official should know that it is not lawful to disobey a final and nonappealable court order." Slone, 983 F.2d at 111. We believe that the reasoning of Slone is fully applicable to the unstayed state court judgment at issue here. Any reasonably competent official must know that unless a judgment has been stayed, it must be obeyed. Accordingly, we conclude that the District Court did not err in ruling that Grossheim, Lee, and Thalacker were not protected by qualified immunity.
 
 
 15
 Defendants also contend that the District Court erred in finding that they violated Walters' due process rights when they failed to implement the unstayed state court default judgment. We disagree. As the District Court held, the state court order gave Walters a liberty interest in being restored to Level IV, and liberty interests are protected by the Due Process Clause of the Fourteenth Amendment. See McNeil v. Director, Patuxent Inst., 407 U.S. 245, 246, 92 S.Ct. 2083, 2085, 32 L.Ed.2d 719 (1972); Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir.1985), cert. denied, 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986). When defendants kept Walters in Level III in violation of the unstayed state court order, they deprived him of his liberty interest in being restored to the less restrictive environment of Level IV. Moreover, since they no longer had lawful authority to keep Walters in Level III, they deprived him of his liberty without due process of law. Cf. Slone, 983 F.2d at 110 (any continued detention after the state lost its lawful authority to hold Slone deprived him of liberty protected from unlawful state deprivation by the Due Process Clause of the Fourteenth Amendment).
 
 
 16
 Defendants argue that because the state court judgment was a default judgment rather than a judgment on the merits of Walters' claims it did not give Walters a liberty interest in being restored to Level IV. In other words, according to defendants a state court judgment cannot create a protected liberty interest unless it rests upon an adjudication of federal constitutional claims the plaintiff has presented to the state court, rather than upon an application of state law. We reject this argument.
 
 
 17
 The Constitution is not the only source of liberty interests protected by the Fourteenth Amendment. Courts frequently look to state law to determine whether it creates an interest protected by the Due Process Clause of the Fourteenth Amendment. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (property interests are created from independent sources such as state law); Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (same). Liberty interests as well as property interests may be created under state law. See, e.g., Hewitt v. Helms, 459 U.S. 460, 471-72, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983) (state regulations created in prisoners a protected liberty interest in staying out of administrative segregation); Washington v. Harper, 494 U.S. 210, 221-22, 110 S.Ct. 1028, 1036, 108 L.Ed.2d 178 (1990) (state prison policy conferred upon prisoners a liberty interest in being free from the arbitrary administration of antipsychotic medication). Indeed, in our recent decision in Slone, the state court order that gave Slone his liberty interest was based not on an adjudication of a constitutional claim but on a state statute authorizing state judges to grant probation to offenders previously sentenced to prison terms and already delivered into the custody of the state department of corrections for service of their sentences. See Slone, 983 F.2d at 108. Similarly, the state court default judgment in the present case was based solely on state law. It ordered that Walters be returned to Level IV, and it thereby created a liberty interest that the Due Process Clause of the Fourteenth Amendment protects. Defendants' broad argument that constitutionally protected liberty interests can never be derived from judgments grounded only on state law is simply not correct, and it cannot be sustained.
 
 
 18
 Turning to Walters' appeal, we reject his argument that the District Court's award of compensatory damages is inadequate. The court based the award on a careful assessment of the loss of privileges Walters suffered by reason of defendants' knowing failure to obey the state court judgment. The court found that $4 per day for the time Walters spent in Level III after the entry of the state court judgment and before he was restored to Level IV (a total of $276) was an appropriate measure of damages. That finding is not clearly erroneous. Although Walters argues that additional compensatory damages should have been awarded for his mental suffering and humiliation resulting from defendants' violation of his due process rights, our review of the record satisfies us that Walters' evidence does not support such a claim. The District Court therefore did not err by failing to award damages for these alleged psychic injuries.
 
 
 19
 We also reject Walters' argument that the District Court should have awarded him punitive damages. As the court recognized, punitive damages may be awarded in a § 1983 case "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). Applying this standard, the District Court found a total lack of evidence to support Walters' claim for punitive damages. We agree with that assessment of the record, and conclude as a matter of law that Walters is not entitled to punitive damages.
 
 
 20
 Finally, Walters argues that, since he is a prevailing party in this lawsuit, the District Court abused its discretion in failing to award him costs.[3] We agree that Walters is a prevailing party in this lawsuit and that he therefore may be entitled to an allowance of costs. See Fed.R.Civ.P. 54(d). Defendants correctly point out, however, that the District Court did not deny costs to Walters. The court's judgment simply does not address the subject of costs. That is understandable, for it does not appear that Walters has ever asked the District Court for an award of costs. As defendants point out, Local Rule 21 of the Northern District of Iowa is a road map for prevailing parties to follow in obtaining costs, and Walters is, for all we can discern, still free to proceed under that rule. Nothing in this opinion bars him from submitting a request for costs to the District Court and from pursuing his request in accordance with the local rule.
 
 
 21
 For the reasons stated above, the judgment of the District Court is affirmed.
 
 
 
 [1]
 The Honorable David R. Hansen, United States Circuit Judge for the Eighth Circuit, sitting by designation in the Northern District of Iowa
 
 
 [2]
 The rule states, in relevant part, that filing a motion to set aside a default judgment "shall not affect the finality of the judgment or impair its operation."
 
 
 [3]
 Walters has proceeded pro se throughout this litigation, so attorney fees are not in issue