United States Court of Appeals,

Fifth Circuit.

No. 93-3082.

Gregory SOCKWELL, Raymond Rochon, and John Crittle, Plaintiffs-
Appellants, Cross-Appellees,

v.

Betty Halbert PHELPS, spouse, personal representative, and
testamentary executrix of decedent, C. Paul Phelps, Jr. and Frank
Blackburn, Defendants-Appellees, Cross-Appellants.

May 10, 1994.

Appeals from the United States District Court for the Middle
District of Louisiana.

Before POLITZ, Chief Judge, GARWOOD, Circuit Judge, and PARKER[*],
District Judge.

ROBERT M. PARKER, District Judge:

Plaintiffs-Appellants Gregory Sockwell, Raymond Rochon and
John Crittle (the Prisoners)[1] filed this action pursuant to 42
U.S.C. § 1983 against Defendants-Appellees C. Paul Phelps (Phelps),
former Secretary of the Louisiana Department of Public Safety and
Corrections, and Frank Blackburn (Blackburn), former Warden of the
Louisiana State Penitentiary, alleging that Phelps and Blackburn,
in their individual capacities, violated their constitutional
rights by racially segregating the prison's two-man cells. After
a *de novo* review of the record, the district court adopted all
except the amount of the punitive damage award of the report and

---

[*]Chief Judge of the Eastern District of Texas, sitting by
designation.

[1]John Crittle has been subsequently released from
incarceration.

recommendation of the magistrate judge, holding that Phelps and Blackburn violated the Prisoners' right to equal protection under the Fourteenth Amendment by knowingly permitting the continued assignment of prisoners to segregated two-man cells based solely on their race. The court awarded the Prisoners nominal damages of $1.00 each, and ordered Phelps and Blackburn to pay punitive damages of $2,000.00 each[2] plus attorney's fees. All parties appeal the judgment of the district court. We AFFIRM.

## FACTS

The parties do not dispute the facts of this case as reflected in the testimony received from two evidentiary hearings before the magistrate judge. A court order was issued in *Williams v. McKeithen,* CA 71-98 (M.D.La.1975), enjoining racial discrimination in the operation or administration of the Louisiana State Penitentiary (Angola) and ordering prison officials to immediately correct any effects of past racial discrimination and to maintain Angola as a completely integrated facility. Deputy Warden Richard Peabody testified, however, that even after the court order was issued it remained the policy and general practice at Angola not to mix black and white prisoners together in the same two-man cell. He further stated that the segregation of prisoners in two-man cells was not racially motivated but, instead, motivated by security concerns and the past incidents of violence between black

---

[2]The district court's order reduced the magistrate judge's recommended amount of $5,000.00 each to $2,000.00 each, and appointed a team to monitor the new warden's desegregation policy.

2

and white prisoners.  He was able to testify as to two incidents, one in 1976 and one in 1977, where violence erupted between black and white prisoners who were placed together in administrative lockdown cells.  However, he did not testify as to whether either of these incidents were investigated or whether either incident developed from racial tension.  Despite his testimony regarding security concerns and past experiences of violence between black and white prisoners, Warden Peabody did admit that the rest of Angola had been completely integrated.

Phelps testified that he was familiar with the court order, and that he understood it to mean that segregating prisoners by race alone is unconstitutional.  Although he toured the cell blocks in Angola on a regular basis, he could not say that he was or was not aware of the general policy of racial segregation of the two-man cells.  He did testify, however, that he did not believe that the past incidents of violence in the cell blocks had racial overtones, but that such incidents usually involved sex or money.

Blackburn testified that while he was warden he became aware of the court order, but that he did not recall ever seeing a white and black prisoner housed together in a two-man cell.  He stated that it was his belief that the two-man cells were racially segregated because of the feeling that there was a need for security, although he could not recall any specific incidents that would have justified a need for security.

The Prisoners testified that while they were confined at Angola they were never housed in a two-man cell with a white

3

prisoner, nor did they ever see a black and white prisoner housed together in a two-man cell. They also testified that white prisoners in two-man cells received preferential treatment over the cells occupied by black prisoners. For example, white two-man cells were called to showers and to sell plasma first, enjoyed better telephone and store privileges, and had a better view of the televisions.

In addition, the Prisoners testified that when a prisoner awaits assignment to a two-man cell, his privileges are suspended. This temporary suspension of privileges, called "administrative lockdown," was prolonged at Angola due to the general policy of racial segregation. As a result, the Prisoners were damaged because they were deprived of privileges such as work, plasma donation, etc. for a longer period of time because they could not be assigned until a two-man cell with another black prisoner became available.

In October 1990, after the Prisoners filed this lawsuit, the present warden at Angola issued a written memorandum in which he terminated the general policy and practice of racially segregating two-man cells.

STANDARD OF REVIEW

A trial court's findings of fact are accepted unless clearly erroneous or grounded on an erroneous view of the law, or an incorrect legal standard. See *Pullman-Standard v. Swint,* 456 U.S. 273, 289, 102 S.Ct. 1781, 1789-90, 72 L.Ed.2d 66 (1982); see also *Branch-Hines v. Hebert,* 939 F.2d 1311, 1320 (5th Cir.1991). Where

4

there exists two permissible views of the evidence, a fact finder's choice between them cannot be clearly erroneous, even if the reviewing court would have weighed the evidence differently. *Branch-Hines v. Hebert,* 939 F.2d at 1321. A finding of fact is clearly erroneous only if the reviewing court, after reviewing the entire record, is convinced that the trial court made a mistake. *Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.,* 951 F.2d 684, 693 (5th Cir.1992). Questions of law, however, are reviewed *de novo. Branch-Hines v. Hebert,* 939 F.2d at 1320.

### EQUAL PROTECTION

The Prisoners contend that the segregation of two-man cells by race at Angola violated their right to equal protection under the Fourteenth Amendment of the United States Constitution. In *Lee v. Washington,*[3] the United States Supreme Court held that segregation of the races in prisons and jails violates the Equal Protection Clause of the Fourteenth Amendment. The Court recognized, however, "that prison authorities have the right, acting in good faith and in particularized circumstances, to take into account racial tensions in maintaining security, discipline, and good order in prisons and jails." *Lee v. Washington,* 390 U.S. at 334, 88 S.Ct. at 995.

In *Williams v. Treen,*[4] this Circuit confirmed the Supreme Court's decision, stating:

We believe that the right to be free from general policies of

---

[3]390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968).

[4]671 F.2d 892 (5th Cir.1982).

5

> racial segregation in prison housing and administration was
> clearly established in the opinions rendered by Judge Johnson
> in *Washington v. Lee,* 263 F.Supp. 327 (M.D.Ala.1966), and the
> Supreme Court's per curiam affirmance in *Lee v. Washington,*
> 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968).

*Williams v. Treen,* 671 F.2d at 902. The exception for "particularized circumstances," however, has not been specifically defined by this Court. Phelps and Blackburn argue that prison security, not discriminatory purpose or intent, formed the foundation of Angola's general policy of racial segregation in its two-man cells, which remained in effect until 1990. They further argue that because racial tensions factor into administrative decisions regarding security, the general policy of segregation in the two-man cells met the "particularized circumstances" exception in *Lee v. Washington,* and that, absent bad faith, this Court should not substitute its views for those of the prison authorities.

To justify the general policy of limited segregation, Phelps and Blackburn cite five factors which contributed to the need for increased security through racial segregation in the two-man cells: (1) prison guards were unable to visually monitor each two-man cell at all hours of the night; (2) the prisoners placed in Angola are the "worst of the worst"; (3) two instances occurred in which black and white prisoners housed together became violent; (4) racial supremacy groups existed within the prison ranks; and (5) interracial conflicts may have triggered more generalized racial violence. In support of the policy, they add that the low number of two-man cell assaults were a direct result of its success.

Although this Court has not specifically defined the

6

"particularized circumstances" exception in *Lee v. Washington,* the general rule is clear: a generalized or vague fear of racial violence is not a sufficient justification for a broad policy of racial segregation.[5] The five factors Phelps and Blackburn argue fail to prove the existence in Angola of an unusual situation in which security and discipline would have demanded segregation. If violent disruptions did occur, we would expect the prison officials to take appropriate action against the offending prisoners, black or white. Even the racial segregation of offending individual prisoners would be acceptable if, based on an individualized analysis, the prison officials determined such action would be needed to stifle particular instances of racial violence.[6] Although we respect the need for security at Angola, the argument that integrated two-man cells may lead to more violence between black and white prisoners is not tenable, given that the rest of the prison was integrated pursuant to the court order in *Williams v. McKeithen.* Therefore, we hold that the general policy of segregating two-man cells in effect at Angola until 1990 was unconstitutional. We further hold that Phelps and Blackburn are not protected under qualified immunity, due to their knowing and intentional participation in a general policy of racial segregation

---

[5]The Tenth Circuit specifically held that a vague fear that desegregation may result in violence is not enough to meet the "particularized circumstances" exception in *Lee v. Washington.* *United States v. Wyandotte County, Texas,* 480 F.2d 969, 971 (10th Cir.1973).

[6]See *McClelland v. Sigler,* 456 F.2d 1266, 1267 (8th Cir.1972).

7

which remained in effect until 1990 and violated a court order mandating full integration of the prison facility.

## COMPENSATORY DAMAGES

Compensatory damages awarded pursuant to § 1983 are governed by common law tort principles. *Keyes v. Lauga,* 635 F.2d 330, 336 (5th Cir.1981). Absent an error of law, the reviewing court will sustain the amount of damages awarded by the fact finder, unless the amount is clearly erroneous or so gross or inadequate as to be contrary to right reason. *Thompkins v. Belt,* 828 F.2d 298, 301 (5th Cir.1987).

The district court upheld the magistrate judge's determination that the Prisoners were entitled to $1.00 each in compensatory damages on grounds that the Prisoners failed to present evidence that they suffered any real harm or quantifiable loss as a result of their prolonged deprivation of privileges. We agree with the lower courts. The Prisoners failed to present evidence in the record that while they were confined without privileges in administrative lockdown, vacancies existed in two-man cells occupied by white prisoners. Without such evidence, the Prisoners have not proved that they suffered any actual damages, and they may not be awarded damages based solely upon the abstract value or importance of the constitutional right violated by Phelps and Blackburn. See *Russell v. Harrison,* 736 F.2d 283, 291 n. 17 (5th Cir.1984). Therefore, we hold that the district court's judgment was not clearly erroneous.

## PUNITIVE DAMAGES

8

As for the punitive damages awarded, the Prisoners challenge the $2,000.00 award on two fronts: they contend that the original award of $5,000.00 each by the magistrate judge was too small and argue that the district court erred when it reduced that amount to $2,000.00 each. Phelps and Blackburn argue that they had no evil intent in following the segregation policy, and that they did not act with reckless or callous indifference to the Prisoners' constitutional rights.

Under § 1983, punitive damages may be awarded only if the official conduct is "motivated by evil intent" or demonstrates "reckless or callous indifference" to a person's constitutional rights. *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983); see also *Thompkins v. Belt,* 828 F.2d at 301-02. However, even if a party has made a proper showing to justify an award of punitive damages, the trier of fact's decision whether to award such damages is discretionary. *Creamer v. Porter,* 754 F.2d 1311, 1319 (5th Cir.1985). The reviewing court may not reverse the award of punitive damages absent an abuse of discretion.

The magistrate judge awarded punitive damages for Phelps' and Blackburn's reckless or callous indifference in their knowing perpetuation of an unconstitutional prison policy in violation of the court order issued in *Williams v. McKeithen.* The district court reduced the amount of punitive damages recommended by the magistrate judge, noting that Phelps and Blackburn were no longer associated with Angola. The purpose of punitive damages under §

1983 is to deter future egregious conduct in violation of constitutional rights. *Creamer v. Porter,* 754 F.2d at 1319. The district court concluded that the elimination of racial segregation would be better served by the threat of future contempt sanctions against the present warden than by the extraction of money from people no longer affiliated with Angola.

We agree with lower courts' finding of reckless or callous indifference. Phelps and Blackburn knowingly participated in the violation of a court order which resulted in the violation of the Prisoners' constitutional rights. Their failure to present any evidence showing that the violence or risk of violence in Angola was race related can only lead to the conclusion that their actions constituted reckless or callous indifference to the constitutional rights of the Prisoners. Nevertheless, the district court's reduction of the punitive damage award must be given deference, and nothing in the record indicates an abuse of discretion. Therefore, we hold that the district court in its discretion properly awarded punitive damages under the circumstances for the total amount of $4,000.00.

### ATTORNEY'S FEES

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, provides that courts may award reasonable attorney's fees to a prevailing party in a § 1983 action. *Kirchberg v. Feenstra,* 708 F.2d 991, 995 (5th Cir.1983). Attorney's fees may be recovered unless special circumstances render such an award unjust. *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88

10

S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). Having upheld the judgment of the district court that Phelps and Blackburn violated the Prisoners' constitutional rights by racially segregating Angola's two-man cells, the Prisoners are entitled to an additional award of reasonable attorney's fees. The Prisoners contend that an award of $5,000.00 in additional attorney's fees is reasonable under the circumstances of this case, while Phelps and Blackburn argue that the decision should be deferred until an evidentiary hearing can be held on the matter.

The question of what constitutes reasonable attorney's fees is a question of fact to be determined by the fact finder. *Jerry Parks Equip. Co. v. Southeast Equip. Co., Inc.,* 817 F.2d 340, 344 (5th Cir.1987). Therefore, we hold that the district court is to receive evidence and thereafter determine a fair and reasonable amount of attorney's fees for the proper preparation, trial, and appeal of this matter.

## CONCLUSION

We AFFIRM the judgment on the basis of the district court's order, and REMAND the matter of the award of attorney's fees for further proceedings consistent herewith.