Valerie STREIT, individually and as class representative; Diego Santillana, individually and as class representative; Michael Roerich, individually, Plaintiffs–Appellees,

v.

COUNTY OF LOS ANGELES, a governmental entity; Jerry Harper, Undersheriff; Michael Graham, Assistant Sheriff; Barry King, Chief; Bob Pash, Chief; Daniel Burt, Commander, Defendants–Appellants.

Eddie Shields, individually and as a class representative, Plaintiff–Appellee,

v.

County of Los Angeles, a governmental entity; Jerry Harper, Undersheriff; Michael Graham, Assistant Sheriff; Barry King, Chief; Bob Pash, Chief; Daniel Burt, Commander, Defendants–Appellants.

Randall Cleaves, individually and as class representative; Alfred Carrillo, individually and as class representative, Plaintiffs–Appellees,

v.

County of Los Angeles, a governmental entity; Jerry Harper, Undersheriff; Michael Graham, Assistant Sheriff; Barry King, Chief; Bob Pash, Chief; Daniel Burt, Commander, Defendants–Appellants.

**6.** Fed. R.App. P. 22(b)(1), (b)(2).

**7.** Circuit Rule 22–1(a).

Munique Williams; Michael E. White; April Marie ,Courie; Eric Mitchell; Diane Ramirez, individually, and as class representative; Heather Yousif, individually, and as class representative; Margo V. Borrup, individually, and as class representative; Quinton Cooper; Ruby Sellars, Plaintiffs–Appellees,

v.

Sherman Block, Sheriff, individually and in his Official Capacity, Defendant,

and

Los Angeles County Sheriff's Department, Defendant–Appellant.

LeEllen Patchen, individually and as class representative; Steven Gray, individually and as class representative; Isaac Tchakmakjian, individually and as class representative, Plaintiffs–Appellees,

v.

County of Los Angeles, a governmental entity; Los Angeles County Sheriff's Department, Defendants–Appellants.

Michael E. White; April Marie Courie; Eric Mitchell; Diane Ramirez, individually and as class representative; Heather Yousif, individually and as class representative; Margo V. Borrup, individually and as class representative; Quinton Cooper; Ruby Sellars; LeEllen Patchen, individually and as class representative; Steven Gray, individually and as class representative; Isaac Tchakmakjian, individually and as class representative; Eddie Shields, individually and as class representative; Diego Santillana, individually and as class representative; Michael Roerich, individually; Randall

Cleaves, individually and as class representative, Plaintiffs–Appellees,

v.

Sherman NMI Block, Sheriff, individually and in his official capacity, Defendant,

and

County of Los Angeles, a governmental entity; Los Angeles County Sheriff Department, as Doe 1, Defendants–Appellants.

Samuel Gladney, Plaintiff–Appellee,

v.

County of Los Angeles, Los Angeles County Sheriff's Department; Estate of Sherman Block; Jerry Harper; Michael Graham; Robert Mann; Barry King; Daniel Burt, Defendants–Appellants.

Munique Williams; Michael E. White; April Marie Courie; Eric Mitchell; Diane Ramirez, individually, and as class representative; Margo V. Borrup, individually, and as class representative; Quinton Cooper; Ruby Sellars, Plaintiffs–Appellees,

and

Johnny Ray Tolbert; Kevin Baxter, individually and as class representatives and in their capacities as taxpayers; Joseph Whitner, individually, and as class representative; Yolanda Corbert, individually, and as class representative; Cassondra McNair, individually, and as class representative; Ronald J. Borrup, individually, and as class representative; Kirk Douglas; Julian

Valdez; Frank Lopez; Joe Sanchez, Jr.; Moises Carranza; Hamid Shahian; Herman Wyche; Duc Huu Pham; Regina Lanell Reed; Roy Lee Wimberly; Gregory White; Edward Allen Palmer, Plaintiffs,

v.

Sherman Block, individually and in his official capacity; Jerry Harper, Undersheriff; Michael Graham, Assistant Sheriff; Barry King, Chief; Does 1 Through 1000, individually and in their official capacities, Defendants,

and

County of Los Angeles, a governmental entity, Defendant–Appellant.

Nos. 99–55897, 99–56041, 99–56310, 99–55898, 99–56042, 99–56766, 99–55899, 99–56233.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 10, 2000

Filed Jan. 12, 2001

David D. Lawrence, Scott D. MacLatchie, and Chandra Gehri Spencer, Franscell, Strickland, Roberts, & Lawrence, Pasadena, California, for the defendants-appellants.

John Burton, Law Offices of John Burton, Pasadena, California; Robert C. Moest, Santa Monica, California, Barrett S. Litt, Litt & Associates, Los Angeles, California, for the plaintiffs-appellees.

Before: PREGERSON, FERGUSON, and WARDLAW, Circuit Judges.

WARDLAW, Circuit Judge:

Does the Los Angeles County Sheriff's Department (the "LASD") in adopting and administering its policy of requiring that a records check, including review of all wants and holds received on a prisoner's release date, act on behalf of the state of California or on behalf of the County of Los Angeles (the "County")? The answer to this question determines whether the County may be subject to liability under 42 U.S.C. § 1983 and *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Because we conclude that the LASD, when implementing its policy of conducting prisoner release records checks, acts for the County in its capacity as the administrator of the Los Angeles County jails, we hold that both the LASD and the County are

subject to liability under section 1983. We also reject the LASD's contention that it is an "arm of the state," reiterating our determination that it is subject to liability under section 1983. We also conclude that the LASD is a "public entity" that is separately suable in federal court. We have jurisdiction under 28 U.S.C. §§ 1291 and 1292(b), and we affirm.

## I. BACKGROUND

Appellees brought suit against the County, its late Sheriff, Sherman Block, the LASD, and various LASD officials responsible for the management and operation of the Los Angeles County jails. The appellees allege that they were detained in county jails after all legal justification for their seizure and detention ended, in violation of both federal and state law.

Before an inmate is released from prison, the LASD conducts a check of the Automated Justice Information System ("AJIS"), a computerized law enforcement database, to confirm that the prisoner is not wanted by any other law enforcement agency. It is the LASD's policy, however, to run the AJIS check only after all wants and holds that arrive on the day a prisoner is scheduled for release are inputted into the database. Due to the high volume of wants and holds received each day, the inputting process can, and often does, take between one to two days to complete. It is only after the inputting process is complete and the computer check run, that the LASD begins the administrative steps toward a prisoner's release. Although no longer required to serve time, these prisoners must remain in jail during the inputting period, extending their incarceration beyond their release date.[1]

Appellees seek monetary damages for overdetention in each of these six separately filed actions.[2] The County and LASD moved to dismiss the appellees' suits. In all of the district court actions but one, the County moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the section 1983 claims brought against it.[3] In the other district court action, the County moved for summary judgment on the appellees' section 1983 claims.[4] The LASD moved under Rule 12(b)(6) to dismiss all six actions in one consolidated motion.

Relying on *McMillian v. Monroe County*, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997), and the California Court of Appeal decision in *County of Los Ange-*

---

1. For an in-depth discussion of the LASD's procedure, see *Fowler v. Block*, 2 F.Supp.2d 1268, 1277–79 (C.D.Cal.1998), *rev'd*, 185 F.3d 866 (9th Cir.1999). In *Fowler*, the district court found that "in the face of [a] state court's 'clearly established' release order, it was unreasonable for the [Sheriff] to do more than simply 'check-out' the Plaintiff after he was returned to custody." *Id.* at 1279. Accordingly, the district court found that AJIS checks conducted after a prisoner's release and resulting in overdetention were impermissible and the sheriffs were not entitled to qualified immunity. *Id.* We subsequently reversed and remanded this case on procedural grounds, and did not reach the constitutional issues.

In at least one other district court case, a preliminary injunction was issued ordering the LASD to desist in delaying a prisoner's release upon the completion of his or her sentence. *See Vanke v. Block*, No. 98–4111 (C.D.Cal. Nov. 7, 1998). In *Vanke*, the district court found that the delays in the AJIS checks process deprived the detainees of their Fourth and Fifth Amendment rights.

2. One additional appeal was heard on a related matter in *Williams v. Block, et al.*, No. 98–55609. The plaintiff, Williams, appealed the district court's denial of her motion for class certification. We reversed and remanded the case to the district court, but since our ruling, the parties have stipulated to dismiss the case.

3. The County moved for dismissal in the *Cleaves, et al. v. County of Los Angeles, et al.*, No. CV–98–09573–WJR; *Gladney v. County of Los Angeles, et al.*, No. CV–99–00586–WJR; *Patchen, et al. v. County of Los Angeles, et al.*, No. CV–98–09574–WJR; *Shields v. County of Los Angeles, et al.*, No. CV–98–09695–WJR; and *Streit, et al. v. County of Los Angeles, et al.*, No. CV–98–09575–WJR.

4. The County moved for summary judgment in *Williams, et al. v. Block, et al.*, No. CV–97–03826–WJR.

les v. Superior Court (Peters), 68 Cal. App.4th 1166, 80 Cal.Rptr.2d 860 (Ct.App. 1998), the County argued that because the Sheriff of Los Angeles (the "Sheriff") functions as a state—not county—official engaged in a law enforcement function, the County cannot be sued under 42 U.S.C. § 1983 for the alleged constitutional torts of the Sheriff or his deputies. The LASD similarly contended that because it is an "arm of the state," [5] the LASD is not within the section 1983 definition of "person," and therefore it could not be held liable. The LASD also urged dismissal on the grounds that it is not a separately suable public entity under California Government Code § 811.2.

The district court rejected each of these arguments and denied the LASD's motion to dismiss all claims. It denied in part, and granted in part, the County's five motions for dismissal in a series of roughly identical orders.[6] In its joint-tentative ruling denying the County's motions to dismiss and the LASD consolidated motion to dismiss, the district court distinguished Peters, which broadly held that "in setting policies concerning the release of persons from the Los Angeles County jail, the Los Angeles County Sheriff acts as a state officer performing state law enforcement duties, and not as a policymaker on behalf of the County of Los Angeles." Peters, 68 Cal.App.4th at 1178, 80 Cal.Rptr.2d at 868. The court noted that the law enforcement function involved in Peters was "determining whether to release a person who may be subject to arrest on an outstanding warrant." It found that, here, "the over-detention had nothing to do with the sher-

iff's law enforcement function [because,] [i]n contrast to Peters, there is no dispute that Plaintiffs were entitled to be released." Rather, "the sheriff's conduct at issue relates to a purely administrative function," and "where the Sheriff acts in a purely administrative manner such action is pursuant to their [sic] county, not state, authority." Thus, the district court held that the LASD was subject to 1983 liability for these actions. .

The district court also addressed the LASD's claim that it was not a separately suable entity. Relying on our decisions in Karim–Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 624 n. 2 (9th Cir.1988), and Shaw v. California Dep't of Alcoholic Beverage Control, 788 F.2d 600, 604–05 (9th Cir.1986), the district court ruled that the LASD is a separately suable entity. It also rejected the LASD's argument that "the amendment of Cal. Evid.Code § 669.1 in some way modified the definition of a 'public entity.'" The court reasoned, "§ 669.1 is only intended to be an evidentiary limitation for cases involving public employees, and is not intended to redefine a 'public entity.'"

Relying on these same reasons recited in its second tentative ruling, the district court denied in part, and granted in part, the County's motion for summary judgment dismissal of the section 1983 claims in the one action in which it did not file a motion to dismiss.[7] The district court also used this tentative ruling to deny the County's remaining motion to dismiss. Specifically, the district court found that

5. See Durning v. Citibank, 950 F.2d 1419, 1423–24 (9th Cir.1991). In Durning, we explained that "[u]nder the 'arm of the state' doctrine, a state agent or agency is immune from suit under the Eleventh Amendment because the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials [or state institutions] are nominal defendants." Id. (citations omitted).

6. The district court granted the County's motions, in part, dismissing the various plain-

tiffs' Fourteenth Amendment claims in each action. In the sixth case, Gladney, the district court reserved ruling pending arguments on several other motions.

7. The district court also ruled upon the County's arguments regarding proximate cause, negligence, Thirteenth Amendment claims, and the application of the Prison Litigation Reform Act. These issues are not before us on this appeal.

"the sheriffs were not state actors, but they were acting on behalf of the County in the instant cases." Therefore, it concluded that the County was answerable under section 1983 for the challenged over-detentions.

On May 25, 1999, the district court certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) all but one of its orders denying the County's and the LASD's motions to dismiss.[8] On July 26, 1999, we granted the County and the LASD permission to appeal these certified interlocutory orders. The County and the LASD also timely filed notices of appeal in each of these cases and those not certified on interlocutory appeal on the basis that the district court's orders are immediately appealable under the collateral order doctrine.

## II. JURISDICTION

Because we have granted the County and the LASD permission to appeal those orders that the district court certified for interlocutory appeal, we have jurisdiction under 28 U.S.C. § 1292(b) to review any issue fairly included within the certified orders. *See Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996) ("As the text of § 1292 indicates, appellate jurisdiction applies to the order certified to the court of appeals, and is not tied to the particular question formulated by the district court."). Thus, we have jurisdiction pursuant to 28 U.S.C. § 1292(b) to review appeals Nos. 99–55897, 99–55898, 99–55899, 99–56041, and 99–56233.[9]

Section 1292(b), however, does not provide the jurisdictional basis for our review of all the appeals now before us. Appeal No. 99–56310 (the County's and the LASD's appeals from the district court's

denials of their motions to dismiss in *Gladney v. County of Los Angeles, et al.*, No. CV–99–00586–WJR) and No. 99–56766 (the County's appeal from the district court's denial of its motion for summary judgment in *Williams v. Block, et al.*, No. CV–97–3826–WJR) have been neither certified by the district court nor approved for interlocutory appeal by this court. Nevertheless, we conclude that we have jurisdiction over these appeals under the collateral order doctrine and the doctrine of pendent appellate jurisdiction.

In *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the Supreme Court established the collateral order doctrine, holding that a district court order that "did not make any step toward final disposition of the merits of the case and will not be merged in final judgment" is appealable as "a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it." *Id.* at 544–45, 69 S.Ct. 1221. In subsequent cases, the Court has upheld a circuit court's use of the collateral order doctrine to entertain jurisdiction over appeals from the denial of a summary judgment motion that raised a qualified immunity defense. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 143, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (holding "that orders denying individual officials' claims of absolute and qualified immunity are among those that fall within the ambit of *Cohen*"); *Mitchell v. Forsyth*, 472 U.S. 511, 527, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (finding that "[t]he denial of a defendant's motion for dismissal or summary judgment on the grounds of qualified immunity easily meets [the] requirements [of a collateral order]"); *id.* at 530, 105 S.Ct. 2806 ("[A]

---

8. Because the district court had reserved its ruling in *Gladney*, the sixth and final action, pending the outcome of other motions, the case was not eligible for certification as part of the consolidated interlocutory appeal.

9. Appeal No. 99–56233, *White, et al., v. Block, et al.*, is the County and LASD's consolidated interlocutory appeal itself. Although the cases are listed individually as well, the interlocutory appeal is included separately to indicate its certification for our review.

district court's denial of a claim of qualified immunity, to the extent it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment."). By direct application of this doctrine, we have jurisdiction in appeal No. 99–56310, regarding the LASD's appeal of the district court's order holding it potentially liable as a County actor and not immune from suit in federal court under Federal Rule of Civil Procedure 17(b).

■ We also conclude that we have jurisdiction over all aspects of appeal No. 99–56310 and No. 99–56766 under the doctrine of pendent appellate jurisdiction. In *Swint v. Chambers County Comm'n,* 514 U.S. 35, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995), the Supreme Court suggested that district court decisions that are "inextricably intertwined" may be appropriate for joint review under the doctrine of pendent party appellate jurisdiction. *Id.* at 50–51, 115 S.Ct. 1203. Acting in accordance with *Swint,* a panel of this court in *Huskey v. City of San Jose,* 204 F.3d 893, 904–05 (9th Cir.2000), recently applied pendent appellate jurisdiction to review two orders denying summary judgment with jurisdictional facts similar to those present here. In *Huskey,* a former deputy city attorney sued the City of San Jose and the individual heads of the City Attorney's office under 42 U.S.C. § 1983, seeking damages for wrongful termination and various other torts. The district court denied the City of San Jose and individual defendants' motions for summary judgment, which claimed a qualified immunity defense. The individuals appealed the denial of summary judgment and we granted review. *Id.* at 898–902. We further found that the order denying the City of San Jose's claim to summary judgment was inextricably intertwined with an order denying the individual's summary judgment motion and therefore employed pendent jurisdiction to hear the City's appeal. *Id.* at 902–06. The same procedural and jurisdictional situation exists here.

Accordingly, because the district court's orders denying the motions to dismiss in appeal No. 99–56310 and denying the motion for summary judgment in appeal No. 99–56766 raise the same issues, use the same legal reasoning, and reach the same conclusions as the earlier orders over which we have jurisdiction under section 1292(b), we find that appeals Nos. 99 56310 and 99–56766 are "inextricably intertwined" with the earlier orders. It is therefore proper exercise of our pendent appellate jurisdiction to review these appeals.

Having determined that we have jurisdiction, we turn now to a de novo review of the merits of the County's and the LASD's appeals.

## III. DISCUSSION

### A. *County Liability*

■ The question of the County's liability for the alleged constitutional torts of the LASD is governed by the analytical framework set out in *McMillian v. Monroe County,* 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997). In *McMillian,* Alabama's Monroe County, like the County here, was sued for allegedly unconstitutional actions undertaken by the Monroe County Sheriff. A county is subject to section 1983 liability for such suits if its policies, whether set by the government's lawmakers "or by those whose edicts or acts that may fairly be said to represent official policy," caused the particular constitutional violation at issue. *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Here, as in *McMillian,* the parties agree that the Sheriff is the policymaker whose actions are to be examined; they "sharply disagree" about whether the Sheriff is a policymaker on behalf of the State, in which case no section 1983 action lies because the Sheriff would not be a "person" within the meaning of the statute, or on behalf of the County.

The Supreme Court in *McMillian* offered two principles which guide us in resolving this question. First, it cautioned against employing a "categorical, all or nothing" approach. *Id.* at 785, 117 S.Ct. 1734. Rather, we are to inquire "whether governmental officials are final policymakers for the local government in a particular area or on a particular issue." *Id.* Second, although the question of municipal liability under section 1983 is one of federal law, "our inquiry is dependent on an analysis of state law." *Id.* at 786, 117 S.Ct. 1734. That is, "our understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law." *Id.* at 786, 117 S.Ct. 1734.

■ The appellants erroneously urge that *only* state law controls this appeal. In particular, the appellants rely almost exclusively on *County of Los Angeles v. Superior Court (Peters)*, 68 Cal.App.4th 1166, 80 Cal.Rptr.2d 860 (Ct.App.1998), as the controlling authority.[10] Although we must consider the state's legal characterization of the government entities which are parties to these actions, federal law provides the rule of decision in section 1983 actions. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 430 n. 5, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997) (finding that "the question whether a particular state agency has the same kind of independent status as a county . . . is a question of federal law . . . [b]ut that federal question can be answered only after considering the provisions of state law that define the agency's character."); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (noting that "the identification of policymaking officials is a question of state law"). And, although it may be instructive on questions of liability in certain specific contexts, state law does not control our interpretation of a federal statute. To trigger section 1983

liability, plaintiffs must claim that their "rights, privileges, or immunities secured by the Constitution and [federal] laws" have been violated under the color of state law or action. 42 U.S.C. § 1983. "The elements of, and the defenses to, a federal cause of action are defined by federal law." *Howlett v. Rose*, 496 U.S. 356, 375, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). Therefore, federal courts have generally recognized the primary importance of federal law in section 1983 litigation. *See Howlett*, 496 U.S. at 376, 110 S.Ct. 2430; *Monell*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611; *Tiemann v. Tul–Center, Inc.*, 18 F.3d 851 (10th Cir.1994); *Larez v. Holcomb*, 16 F.3d 1513, 1520 (9th Cir. 1994). Recognizing the appropriate deference to state law in the context of section 1983, the *McMillian* Court closely examined the Alabama Constitution, Code and case law, finding critical to its decision that the Alabama Supreme Court had interpreted various of the relevant provisions and their historical background as evidence of " 'the framer's intent to ensure that sheriffs be considered executive officials of the state.' " *Id.* at 789, 117 S.Ct. 1734 (citations omitted). After its detailed analysis of Alabama's governmental structure and allocation of powers and duties among its institutions, the Court concluded that "Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties." *Id.* at 793, 117 S.Ct. 1734. The Court, however, rejected a "uniform, national characterization of all sheriffs," because "such a blunderbuss approach would ignore a crucial axiom of our government: the States have wide authority to set up their state and local governments as they wish." *Id.* at 795, 117 S.Ct. 1734. Justice Ginsburg, in dissent, nevertheless emphasized the limited scope of *McMillian*'s holding through its "Alabama-specific approach" and its admonition to examine the particular function at issue in a given case.

10. As will be discussed below, we note here that *Peters* is factually distinguishable from the cases before us and therefore would not "control" our decision in any event.

*Id.* at 804, 117 S.Ct. 1734 (Ginsburg, J. dissenting). As Justice Ginsburg noted, the majority opinion did not question that a sheriff might be a county policymaker for some purposes and in some states. *Id.*

■ In the cases before us, the district court found that the function in question was the effectuation of the release of persons where it is clear that there is no legal cause for their continued detention; and that in that function, the LASD acts pursuant to county, not state authority. The function as described by the district court may be overly narrow. However, even if we view the function more broadly as the oversight and management of the local jail, we are compelled to agree with the district court that the Sheriff acts for the County in this management function. This conclusion is based on our own independent analysis of California's constitution, statutes, and case law. *Weiner v. San Diego County*, 210 F.3d 1025, 1029 (9th Cir.2000) (noting that a reviewing court must "examine California's constitution, statutes, and case law" when determining a county's liability under *McMillian*).

Unlike the Alabama Constitution,[11] the California Constitution does not list sheriffs as part of "the state 'executive department.'" *McMillian*, 520 U.S. at 787, 117 S.Ct. 1734 (finding this designation "especially important" for determining liability). Instead, Article XI, section 1(b) of the California Constitution designates sheriffs as county officers. Cal. Const. art. XI, § 1(b) ("The Legislature shall provide for ... an elected county sheriff ....."); *see also DeGenova v. Sheriff of DuPage County*, 209 F.3d 973, 976 (7th Cir.2000) (noting that the Illinois Constitution's designation of sheriffs as county officers "strongly indicates that the Sheriff is an agent for the county, and not the State"). Indeed, "[n]ot

only does the California Constitution lack the provisions most important to the Supreme Court's decision in *McMillian*, its provisions read much like those of the Alabama Constitution prior to that State's determined effort to clarify that sheriffs were acting for the State when exercising their law enforcement functions." *Roe v. County of Lake*, 107 F.Supp.2d 1146, 1149 (N.D.Cal.2000); *see McMillian*, 520 U.S. at 788, 117 S.Ct. 1734. Thus, under the California Constitution, the LASD is generally a county, not state, agency. Even more critical to our analysis, there is no provision in the California Constitution that states that the LASD acts for the state when managing the local jails.

The California Government Code also supports the conclusion that the LASD operates for the County when administering local prison policy. Although the California Attorney General, like the Alabama Attorney General in *McMillian*, has statutory control over the sheriffs in a law enforcement capacity, in California, the counties hold the ultimate power over the jails. *Compare* Cal. Gov.Code § 12560 (granting the Attorney General power over the sheriffs' activities relevant to the "investigation or detection of crime"), *with* Cal. Gov.Code § 25303 (granting the county boards of supervisors broad fiscal and administrative powers for the management of the individual county jails so long as the boards do not "obstruct the investigative function of the sheriff of the county"). The counties retain the power to transfer control of a county jail from the sheriff to a county-created department of corrections, suggesting that the counties actually control and operate the jails, and not the state via the sheriffs. Cal. Gov.Code § 23013; *Beck v. County of Santa Clara*, 204 Cal.App.3d 789, 793, 251 Cal.Rptr. 444,

---

**11.** Historically, Alabama county sheriffs were squarely placed under state control to stop them from assisting lynch mobs in killing black prisoners. *McMillian*, 520 U.S. at 788, 117 S.Ct. 1734. No such history has forced California to take control of its county sheriffs through its state constitution. In fact, quite

the opposite has been true in California. In 1970, the California legislature deleted constitutional provisions that gave it the authority to define the sheriffs' duties, devolving control from the state to the counties. *See Beck v. County of Santa Clara*, 204 Cal.App.3d 789, 796, 251 Cal.Rptr. 444, 447 (1988).

445 (1988). We find that sections 23013 and 25303 weigh heavily in favor of our conclusion that the LASD's jail-release policies are a county function and a county concern. *See Dotson v. Chester,* 937 F.2d 920, 928 (4th Cir.1991) (interpreting a Maryland statute virtually identical to section 23013 and concluding that because "state statutes confer authority on the counties to transfer control of the jail from the sheriff to a county warden," it has "no doubt but that sheriffs are final policymakers *for counties* when operating jails" (emphasis added)). Thus, under these state statutes, the County, not the state, oversees the local jails, and the LASD, as the administrator of those jails, acts for the County.

Other provisions in the California Government Code further support the County's liability for the LASD's actions. Under California law, monetary damages for section 1983 claims are paid by the County and not the state. Cal. Gov.Code § 815.2. This crucial factor weighs heavily toward finding that, in the cases at hand, the LASD functions as a county, rather than a state, agency. *See McMillian,* 520 U.S. at 789, 117 S.Ct. 1734 (stating that it was "critical[ ] for our case" and "strong evidence in favor of the ... conclusion that sheriffs act on behalf of the State" that a judgment against the sheriff would be a suit against the state, and that the county would not be liable for a sheriff's acts under respondeat superior). In California, sheriffs are elected county officers. *See* Cal. Gov.Code § 24000(b) (providing that a sheriff be included as one of the county officers); Cal. Elec.Code § 314 (defining a "county officer" as "any elected officer enumerated in ... Section 24000 ... of the Government Code."). Sheriffs are required to have their offices at the county seat with the other county officers, Cal. Gov.Code § 24250; their vacancies are filled as "provided by law for filling elective county offices;"[12] Cal. Gov.Code § 24205; and their services are contracted

out by the counties—not the state. *See* Cal. Gov.Code § 53069.8; *see also* County of Los Angeles Charter §§ 56, 56, 56. These various state provisions lead inexorably to the conclusion that the LASD is tied to the County in its political, administrative, and fiscal capacities. Therefore, the County appears subject to liability for the LASD's actions.

Even the Los Angeles County Code supports the conclusion that the LASD's connection to the County subjects the County to potential liability. The LASD is an agency established and governed by the Los Angeles County Code. *See* Los Angeles County Code, ch. 2.34. The Los Angeles County Sheriff is an elected position that is established by the Los Angeles County Charter. *See* Los Angeles County Charter, art. IV, sec. 12. The Los Angeles County Board of Supervisors retains budgetary oversight and control over the LASD. *See* Los Angeles County Code, subch. 4.12.030. Like all other county agencies, the LASD submits budget requests to the LASD each fiscal year. *See* Los Angeles County Code, subch. 4.12.070. Whether under state or local law, the County appears liable for the LASD's actions.

Finally, in reviewing the relevant case law, we find equally compelling evidence to hold the County liable for the LASD's conduct in administering the AJIS checks. Of particular importance to our analysis is *Sullivan v. County of Los Angeles,* 12 Cal.3d 710, 717, 117 Cal.Rptr. 241, 244, 527 P.2d 865, 868 (1974). In *Sullivan,* the California Supreme Court held that the County was liable for the Sheriff's failure to release a prisoner who had served a completed sentence. Jack Sullivan was to be released from a 50–day drunk driving sentence after a Los Angeles Superior Court issued an order dismissing the charges against Sullivan. *Id.* at 714, 117

12. In the County of Los Angeles, the Los Angeles County Board of Supervisors appoints an interim sheriff to hold office until the next countywide election. County of Los Angeles Charter § 16.

Cal.Rptr. 241, 242, 527 P.2d 865, 866. Because the Superior Court neglected to file an order for his release, Sullivan remained in jail and served his full sentence. *Id.* Due to the administrative error relating to the previously unfiled release order, no order was issued to release Sullivan upon completion of his full sentence either. *Id.* Sullivan was finally released twelve days after his sentence ended and nearly a month after his early release date. *Id.* at 715, 117 Cal.Rptr. 241, 243, 527 P.2d 865, 867. The California Supreme Court held that the Sheriff's failure to release Sullivan resulted in his false imprisonment, and therefore held the County liable for damages. *Id.* at 716–17, 117 Cal.Rptr. 241, 243–44, 527 P.2d 865, 868–69. The *Sullivan* court reasoned that "when the jail term has expired; in the eyes of the law [the] plaintiff is no longer a 'prisoner.'" *Id.* at 717, 117 Cal.Rptr. 241, 244, 527 P.2d 865, 868. This holding is applicable to the cases at hand.

Other cases further support holding the County responsible under section 1983 for the LASD's actions. In *Beck v. County of Santa Clara,* 204 Cal.App.3d 789, 251 Cal. Rptr. 444 (Ct.App.1988), the California Court of Appeals upheld the County of Santa Clara's exercise of authority over its local jails, when it chose to transfer the management of the jails from the county sheriff to a newly created County Department of Detention. *Id.* at 792–93, 251 Cal.Rptr. 444, 445–46. The Court of Appeals found that although sheriffs derive their powers from the state in part, the control over the local prisons is within the authority of the individual counties. *Id.* at 795–805, 251 Cal.Rptr. 444, 446. A recent case from the Northern District of California, *Roe v. County of Lake,* 107 F.Supp.2d 1146 (N.D.Cal.2000), is also instructive. In a well-reasoned opinion analyzing *McMillian*'s application to a section 1983 action against a local county sheriff and the county in which he was elected, the district court found that in the setting of policies and administration of his office, the sheriff was the County's chief policymaker. We agree with the district court's reasoning that:

> Recognizing that local police power is derived from the State, *McMillian* requires a court to analyze the delegation of that power to determine whether it was sufficiently complete such that a suit for abuse of that power is not a suit against the State. It seems clear ... that California's delegation of authority to [the] Sheriff [here] is sufficiently complete. It is difficult to see how a judgment against a sheriff who, as is alleged here, permits his office to violate the civil rights of women in the way he maintains his staff and sets his policies, will operate as a judgment against the state.

*Id.* at 1151 (citations omitted).

The County does not counter with any arguments predicated on an analysis of the California Constitution, codes, or regulations; nor does it urge upon us contrary provisions in its charter or regulations. Rather than conducting an independent analysis of California law, the County urges us simply to adopt the holding of *County of Los Angeles v. Superior Court (Peters),* 68 Cal.App.4th 1166, 80 Cal. Rptr.2d 860 (Ct.App.1998), in which the California Court of Appeal found that the LASD was a state actor and therefore immune from liability under 42 U.S.C.1983. Peters sued the LASD and the County because the LASD held her for ten days after she had posted bail. The LASD overdetained Peters based on a facially-valid outstanding arrest warrant that was subsequently found to have been issued for another person. Peters claimed the LASD reasonably should have known the warrant did not apply to her and sought damages under section 1983.

The California Court of Appeal concluded that "in setting the policies governing the release of prisoners from the Los Angeles County jail, the Los Angeles County Sheriff acts as a state official rather than a policymaking official for the County of Los

Angeles." *Id.* at 1168, 80 Cal.Rptr.2d at 861 (citing *Pitts v. County of Kern,* 17 Cal.4th 340, 70 Cal.Rptr.2d 823, 949 P.2d 920 (1998)).[13] Relying on *Pitts* and *McMillian,* the *Peters* court examined the relevant sections of the California Government Code and state case law in reaching its conclusion. The County argues that *Peters* is analogous to the cases on appeal and therefore controls our analysis. We disagree.

Although the general issue of overdetention was presented in both *Peters* and the cases at hand, the factual scenarios are quite distinct. In *Peters,* the LASD acted upon a facially-valid warrant in its detention of the plaintiff, where as here, in conducting AJIS checks, the LASD is conducting its own administrative search for outstanding warrants, wants, or holds upon which it would be required to act, if they existed. Although this distinction may be perceived as subtle, for purposes of our analysis, it is critical. Acting upon a warrant is a law enforcement function with which the LASD is tasked under California state law. *See* Cal. Gov.Code § 12560. Searching for wants and holds that may or may not have been issued for persons whom the state has no legal right to detain is an administrative function of

jail operations for which the LASD answers to the County. *See* Cal. Gov.Code §§ 25303, 26605. Whether or not the policy and practice of detaining persons beyond their term of incarceration for this administrative function violates the Constitution will be a question for the trial court.

Moreover, even if the case were on all fours we would not be bound by *Peters*'s conclusion regarding section 1983 liability because such questions implicate federal, not state, law. *See Owen v. City of Independence,* 445 U.S. 622, 647 n. 30, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Weiner,* 210 F.3d at 1029. Although we have never before addressed the question we resolve today, we note that our holding comports with the many cases in which we have assumed California sheriffs to be county policymakers for section 1983 purposes.[14]

Under *Monell,* the County would be liable for section 1983 damages "[i]f the sheriff's actions constitute county 'policy.'" *McMillian,* 520 U.S. at 783, 117 S.Ct. 1734 (citing *Monell,* 436 U.S. at 694, 98 S.Ct. 2018). Upon examining the precise function at issue in conjunction with the state constitution, codes, and case law, we conclude that the LASD acts as the final

---

**13.** In *Pitts,* the California Supreme Court applied *McMillian* to determine "whether for the purposes of local government damages liability, a California district attorney acts on behalf of the state or the county when preparing to prosecute and while prosecuting criminal violations of state law, and when establishing policy and training employees in these areas." *Pitts,* 17 Cal.4th at 345, 70 Cal. Rptr.2d 823, 826, 949 P.2d 920, 923. The *Pitts* court held that "a district attorney acts on behalf of the state when training personnel for and developing policy regarding the preparation for prosecution and prosecution of criminal violations of state law," and therefore found the district attorney was not a suable person under section 1983. *Id.* at 366, 70 Cal.Rptr.2d 823, 839, 949 P.2d 920, 936. Although *Pitts* provides some insight into California's application of *McMillian,* we note that the differences between the duties and activities of district attorneys and sheriffs are too great to allow *Pitts* to influence our decision in the cases on appeal, especially in light

of the requisite case-by-case analysis demanded by *McMillian.*

**14.** Again, in *County of Lake,* the district court exhaustively compiled a list of cases in which "the Ninth Circuit has considered a California sheriff a local law enforcement agent for purposes of establishing section 1983 liability under *Monell.*" *County of Lake,* 107 F.Supp.2d at 1148; *see id.* at 1148 n. 4. They include cases holding California sheriffs liable as local agents decided both before and after *McMillian. See, e.g., Headwaters Forest Def. v. County of Humboldt,* 211 F.3d 1121, 1126 n. 2 (9th Cir.2000); *LaLonde v. County of Riverside,* 204 F.3d 947, 961 (9th Cir.2000); *Henry v. County of Shasta,* 132 F.3d 512, 517–23 (9th Cir.1997); *Navarro v. Block,* 72 F.3d 712, 714–15 (9th Cir.1995); *Hallstrom v. City of Garden City,* 991 F.2d 1473, 1481–82 (9th Cir.1993); *Redman v. County of San Diego,* 942 F.2d 1435, 1447 (9th Cir.1991); *Merritt v. County of Los Angeles,* 875 F.2d 765, 770–71 (9th Cir.1989).

policymaker for the county when administering the County's release policy and not in its state law enforcement capacity. We therefore affirm the district court's holding that the LASD, when functioning as the administrator of the local jail, is a County actor, and that the County may therefore be subject to liability under 42 U.S.C. § 1983.

## B. *LASD Liability*

### 1. *Suable Entity*

The LASD also argues that it is not separately suable in federal court under Federal Rule of Civil Procedure 17(b). In support of its argument, the LASD cites *Garcia v. County of Los Angeles*, 588 F.Supp. 700 (C.D.Cal.1984), in which the LASD was found to be a non-separately suable entity. In the cases at hand, the district court recognized that in a more recent opinion, *Shaw v. California Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 605 (9th Cir.1986), we found a police department to be a separately suable entity and therefore declined to apply *Garcia* in favor of *Shaw*. As we pointed out in *Shaw*,

> Under Rule 17(b) of the Federal Rules of Civil Procedure, the Police Department's capacity to be sued in federal court is to be determined by the law of California. Section 945 of the California Government Code provides that "[a] public entity may sue or be sued." Section 811.2 of the Government Code defines a "public entity to include 'the State, the Regents of the University of California, a county, city, district, public authority, public agency, and any other political subdivision or political corporation in the State.'"

*Id.* at 604.

Relying on California court decisions that "held that a police department is a public entity under section 200 of the California Evidence Code," we then concluded that "the courts of California would hold that the Police Department is a public entity under section 811.2." *Shaw*, at 604; *see also Karim–Panahi v. Los Angeles*

*Police Dep't*, 839 F.2d 621, 624 n. 2 (9th Cir.1988) ("Municipal police departments are 'public entities' under California law and, hence, can be sued in federal court for alleged civil rights violations."). Thus, under Rule 17(b) a Police Department may be sued in Federal Court. *Shaw*, at 605.

■ Although the appeals before us, unlike *Shaw* and *Karim–Panahi*, confront the suability of a *sheriff's* department rather than a *police* department, the LASD does not contend that *Shaw* and *Karim–Panahi* are distinguishable on this ground, and we see no basis for such a distinction. Indeed, in reaching our decision in *Shaw*, we rejected the holding of *Garcia*, in which "the district court held that the Los Angeles County Sheriff's Department was not a 'public entity' under § 811.2." *Shaw*, 788 F.2d at 604; *see also Jackson v. Alameda County Sheriff's Dep't*, No. C–92–4419–BAC, 1993 WL 174896, at *4 (N.D.Cal. May 14, 1993) (reading *Shaw* to hold that sheriff's departments are separately suable public entities under California law).

The LASD also argues that *Shaw* was subsequently undermined by a change in the California Evidence Code provision on which it relied. However, our decision in *Karim–Panahi*, a progeny of *Shaw*, was rendered after the Evidence Code section to which the LASD points, section 669.1, was added. *See* Cal. Evid.Code § 669.1 historical and statutory notes (West 1995). Therefore, even if the LASD's argument were availing, *Karim–Panahi* would nevertheless control our decision. *See Visness v. Contra Costa County (In re Visness)*, 57 F.3d 775, 778 (9th Cir.1995) (stating that to the extent a prior panel's decision "rests on state law, a *change* in California statutory and common law ... would permit" a subsequent panel "to reconsider the issues decided by" the prior panel (emphasis added)); *Jones–Hamilton v. Beazer Materials & Servs.*, 973 F.2d 688, 696 n. 4 (9th Cir.1992) (noting that a prior panel's "interpretation of California law is 'binding in the absence of any sub-

*sequent* indication from the California courts that our interpretation was incorrect' " (emphasis added) (quoting *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir.1983))).

Moreover, section 669.1 does not purport to alter the meaning of "public entity," to have any impact on the Evidence Code section on which the *Shaw* Court actually relied (section 200), or to affect section 811.2 of the Government Code. *See* Cal. Evid.Code § 669.1. Thus, even if we were to entertain the LASD's argument, we would reject it. The California legislature's enactment of section 669.1 "does not provide the kind of indication that our past interpretation of California law was incorrect that would cause us to revisit our holding in [*Shaw* ]." *Jones–Hamilton*, 973 F.2d at 696 n. 4.

Accordingly, we agree with the district court and conclude that under *Shaw* and *Karim–Panahi*, the LASD is a separately suable entity.

### 2. *Arm of the State Doctrine*

■ The LASD further argues that even if we find that it is a separately suable entity, it is entitled to Eleventh Amendment immunity under the "arm of the state" doctrine. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Agencies of the state are generally immune from private damage actions brought in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The LASD contends that as an arm of the state, it is not a "person" within the meaning of section 1983 and, therefore, can not be held liable for the overdetentions.

■ The district court did not formally engage in an arm of the state analysis, instead relying upon the reasoning set forth in an unpublished memorandum and order from the Northern District of California. There, the court, using a somewhat informal arm of the state analysis itself, concluded that the Alameda County Sheriff was not an arm of the state because it was acting in an administrative capacity for the county. Upon consideration of the appropriate factors, however, we agree with the district court's conclusion that the LASD is not an arm of the state and therefore does not enjoy Eleventh Amendment immunity.

■ In determining whether an entity is an arm of the state we inquire whether " 'the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials [or state entities] are nominal defendants.' " *Durning v. Citibank*, 950 F.2d 1419, 1423 (9th Cir.1991) (alteration in original) (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945)). This is a question of federal law, which "can be answered only after considering the provisions of state law that define the agency's character." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 n. 5, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997).

■ We consider five factors when determining whether a governmental agency is an arm of the state:

■ whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has the power to take property in its own name or only the name of the state, and [5] the corporate status of the entity.

*Durning*, 950 F.2d at 1423 (quoting *Mitchell v. Los Angeles Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir.1988) (citations omitted)).

We are satisfied that the LASD is not acting as an arm of the state when administering the local county jails. First, the County, not the state, is financially liable for the LASD's actions in its capacity as

the administrator of the local jails. Cal. Gov.Code § 815.2. As established in *Sullivan v. County of Los Angeles,* 12 Cal.3d 710, 717, 117 Cal.Rptr. 241, 527 P.2d 865 (1974), the County is liable specifically for the LASD's overdetention of individuals who have served a completed prison sentence—the very actions at issue here. *Id.* at 716–17, 117 Cal.Rptr. 241, 244, 527 P.2d 865, 868. This factor, which weighs against the LASD's position, is the most important factor in identifying an arm of the state. *Durning,* 950 F.2d at 1424; *Jackson v. Hayakawa,* 682 F.2d 1344, 1350 (9th Cir.1982); *Ronwin v. Shapiro,* 657 F.2d 1071, 1073 (9th Cir.1981); *see also Hess v. Port Auth. Trans–Hudson Corp.,* 513 U.S. 30, 49, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994) (noting that, in determining whether an entity is an arm of the state, "the vast majority of Circuits ... have concluded that the state treasury factor is the most important factor to be considered ... and, in practice, have generally accorded this factor dispositive weight" (omission in original) (internal quotation marks omitted)); *cf. Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (holding that the Eleventh Amendment precludes federal courts from adjudicating suits where judgments against the state would be paid with state funds).

Second, conducting the AJIS checks is not a central government function, but the administration of a County policy. Put differently, the LASD does not act in a law enforcement capacity when administering the County's jail release policy. The sheriffs have exclusive responsibility for running the county jails. Cal. Gov.Code § 26605. But the counties retain the ultimate authority over the local jails through their fiscal and administrative oversight. Cal. Gov.Code §§ 23013, 25303. These laws establish that the relationship regarding the administration of the prisons system is between the counties and the sheriffs, not the state and the sheriffs. There are no provisions in the California Constitution or code that grant the state control over the prisons via the sheriffs. Thus, in the cases at hand, the LASD is not performing a central government function for the state when conducting the pre-release AJIS checks. Rather, it performs this function at the behest of the County. This conclusion also weighs against considering the LASD an arm of the state.

Third, we have found that the LASD is a separately suable entity. As discussed above, in accordance with our holdings in *Shaw v. California Dep't of Alcoholic Beverage Control,* 788 F.2d 600, 605 (9th Cir. 1986), and *Karim–Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 624 n. 2 (9th Cir.1988), a local law enforcement agency can be considered a separably suable entity. This factor also weighs against the LASD's claim for immunity.

The record is bare with respect to the remaining two factors. We therefore find no factors weighing in favor of a finding that the LASD is an arm of the state, especially in view of our extensive analysis of the structure and relationships of the LASD in its operation of the County's jails. Accordingly, we hold that the LASD is not an arm of the state of California in its administration of the local county jails. Therefore, we conclude that the district court correctly rejected the LASD's claim of Eleventh Amendment immunity.

## VI. CONCLUSION

For the foregoing reasons, the district court's orders denying the LASD's motions to dismiss and the County's motions to dismiss and for summary judgment are AFFIRMED.