Eric SMITH, Nicholas Smith, Ethel Smith, and the Estate of Eric Smith (by and through its administrator Ester Smith), Plaintiffs,

v.

COUNTY OF LOS ANGELES, Defendant.

Case No. CV 07–06207 DDP (Ex).

United States District Court,
C.D. California.

Feb. 7, 2008.

Hermez Moreno, Richard T. Copeland, Frank Perez, Moreno and Perez, Los Angeles, CA, for Plaintiffs.

John Francis Peterson, Kenneth A. Maranga, Lizel Rivera Cerezo, Maranga & Morgenstern, Woodland Hills, CA, for Defendant.

## ORDER DENYING MOTION TO DISMISS

DEAN D. PREGERSON, District Judge.

This matter comes before the Court on Defendant's motion to dismiss for failure to state a claim upon which relief can be granted. After reviewing the materials submitted by the parties and considering the arguments therein, the Court DENIES the motion.

## I. BACKGROUND

According to Plaintiffs' complaint, the following facts form the basis of this lawsuit: Prior to February 20, 2007, Plaintiff Eric Smith was incarcerated at Men's Central Jail in Los Angeles County. (Compl. ¶ 15.) Smith suffered from respiratory problems, for which his medical provider had prescribed an asthma inhaler as treatment. (*Id.*) During his incarceration, Smith informed Defendant County of Los Angeles, including its employees, agents, representatives, sheriff's deputies, physicians, nurses, and other medical personnel about his condition and the medication he needed to survive. (*Id.* ¶ 16.) Despite their knowledge of Smith's condition, and the medicine he required, Defendant's agents failed to provide Smith with an inhaler. (*Id.* ¶ 17.) As a result, Smith suffered in pain "for an appreciable period of time," and then, on February 20, 2007, Smith died. (*Id.* ¶¶ 14, 18–19.)

Smith's son and mother, Nicolas and Ethel Smith, together with Smith's estate, now bring this lawsuit against the County of Los Angeles and Does 1–10. They charge that the County's failure to provide Smith with necessary asthma medicine stemmed from a policy or practice of denying inmates necessary medical care and of failing to train employees how to provide necessary medical care. Plaintiffs allege violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as state tort claims for negligence and wrongful death. Defendant now moves to dismiss the case for failure to state a claim.

## II. LEGAL STANDARD

The purpose behind Federal Rule of Civil Procedure Rule 12(b)(6) is to "test[ ] the legal sufficiency of the claims asserted in the complaint," and it embodies "a powerful presumption against rejecting pleadings for failure to state a claim." *Ileto v. Glock, Inc.,* 349 F.3d 1191, 1199–1200 (9th Cir.2003) (internal quotation marks omitted). All that is required is a "short and plain statement showing that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). Further, when considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact are accepted as true and should be construed "in the light most favorable to the plaintiff." *Perfect 10, Inc. v. Visa Inter'l Serv. Ass'n,* 494 F.3d 788, 794 (9th Cir.2007) (internal quotation marks omitted).

## III. DISCUSSION

### A. *Evidence of an Unconstitutional Policy or Practice*

Defendant argues that Plaintiffs' complaint fails to show that the denial of

medical care constituted a policy or practice sufficient to impose liability on a municipality pursuant to 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In the Ninth Circuit, however, the showing necessary to withstand a motion to dismiss on claims of unconstitutional customs or policies is very low; "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." *Karim–Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir.1988) (internal quotation marks omitted).

In this case, Plaintiffs allege that in denying Smith his inhaler despite an awareness of its necessity, Defendant violated Smith's constitutional rights. Plaintiffs further allege that these actions occurred because Defendant "promulgated, created, maintained, ratified, condoned, and enforced a series of policies, procedures, customs and practices which authorized the arbitrary punishment and infliction of pain, torture, and physical abuse of certain inmates and detainees." (Compl. ¶ 58.) At this early stage in the litigation, such an allegation provides the requisite notice to Defendant of the claims it will be forced to defend.

### B. *Eleventh Amendment Immunity*

■ "[O]nly States and arms of the State possess immunity from suits authorized by federal law. Accordingly, [the Supreme Court] has repeatedly refused to extend sovereign immunity to counties." *N. Ins. Co. of N.Y. v. Chatham County, Ga.*, 547 U.S. 189, 193, 126 S.Ct. 1689, 164 L.Ed.2d 367 (2006) (citations omitted). Defendant claims that the case must be dismissed because, under California law, "the *county* sheriff is a *state* actor protected by the Eleventh Amendment when he acts in his law enforcement capacity." (Mot. 4.) The Court disagrees.

*McMillian v. Monroe County*, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997), set forth the framework for determining when a county officer is a state actor for purposes of section 1983. An official represents a public entity (county or state) when he acts as a "final policymaker[ ] for the [public entity] in a particular area, or on a particular issue." *Id.* at 785, 117 S.Ct. 1734. Courts look to state law for guidance in identifying such authority. Importantly, however,

> [t]his is not to say that state law can answer the question for us by, for example, simply labeling as a state official an official who clearly makes county policy. But our understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law.

*Id.* at 786, 117 S.Ct. 1734.

On several occasions, after examining California constitutional and statutory authority, the Ninth Circuit has held that "the Sheriff acts for the County" and not the State when he performs his functions of "oversight and management of the local jail." *Streit v. County of Los Angeles*, 236 F.3d 552, 561 (9th Cir.2001); *see also Cortez v. County of Los Angeles*, 294 F.3d 1186 (9th Cir.2002). Oversight and management of a local jail, with respect specifically to the promulgation and application of policies regarding inmate medical care, are the practices challenged in this case. As this Court is bound by Ninth Circuit precedent, these holdings should end the inquiry.

Defendant argues, however, that an intervening California Supreme Court decision reveals that the Ninth Circuit's interpretation of California law was incorrect. In *Venegas v. County of Los Angeles*, 32

Cal.4th 820, 839, 11 Cal.Rptr.3d 692, 87 P.3d 1 (2004), the California Supreme Court held that "California sheriffs act as state officers while performing state law enforcement duties such as investigating possible criminal activity." The court reasoned that Eleventh Amendment immunity applies to "situations in which ... sheriffs are actually engaged in performing law enforcement duties, such as investigating and prosecuting crime, or training staff and developing policy involving such matters." *Id.* at 838, 11 Cal.Rptr.3d 692, 87 P.3d 1. This Court rejects that holding.

*Venegas* misconstrued federal constitutional law. Contrary to Defendant's contention, the question of whether the sheriff is a county or state official is not purely one of state law. Rather, at bottom the question is one of federal law regarding the meaning of Eleventh Amendment immunity and section 1983. The United States Supreme Court, as the ultimate expositor of federal law, has determined that this *"federal* question can be answered only after considering the provisions of state law that define the agency's character." *McMillian,* 520 U.S. at 786, 117 S.Ct. 1734 (emphasis added) (internal quotation marks omitted). Therefore, federal courts must consider the relevant state law in making their determinations.

"This does not mean, however, that [federal courts] must blindly accept [the California Supreme Court's] balancing of the different provisions of state law in determining liability under § 1983." *Weiner v. San Diego County,* 210 F.3d 1025, 1029 (9th Cir.2000). State law gives federal courts the specifics that form the basis of the determination, but the framework within which the determination is made, and the factors that must be considered, are federal through and through. *See Brewster v. Shasta County,* 275 F.3d 803, 811 (9th Cir.2001) (holding that federal courts are not bound by a state court's

decision as to whether an official represents the state or the county because "the questions regarding section 1983 liability implicate federal, not state law") (internal quotation marks and alterations omitted).

In elucidating the standard for Eleventh Amendment immunity from section 1983 suits, the Supreme Court has emphasized that a State's financial liability for county torts is a critical factor in justifying an extension of the immunity to a county sheriff. In *McMillian,* "critical[ ]" to the Court's holding that sheriffs in Alabama were state actors was "evidence of the [state constitutional] framers' intent to ensure that sheriffs be considered executive officers of the state." *McMillian,* 520 U.S. at 789, 117 S.Ct. 1734 (internal quotation marks omitted). State case law holding "that tort claims brought against sheriffs based on their official acts ... constitute suits against the State, not suits against the sheriff's county" constituted "strong evidence" of this intent. *Id.* In other words, Alabama's responsibility for the actions of its local sheriff proved the sheriff to be a state actor.

The importance of financial liability as an indicator supporting immunity is confirmed by a string of United States Supreme Court cases holding that protecting the state coffers is of paramount importance in the immunity analysis. *See, e.g., Alden v. Maine,* 527 U.S. 706, 756–57, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (noting that sovereign immunity "does not bar certain actions against state officers for injunctive or declaratory relief," nor does it extend to personal-capacity suits "so long as the relief is sought not from the state treasury"); *Hess v. Port Authority Trans–Hudson Corp.,* 513 U.S. 30, 48, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994) (recognizing the "vulnerability of the State's purse as the most salient factor in Eleventh Amendment determinations").

The California Supreme Court, of course, is bound by the Supremacy Clause of the United States Constitution to follow the United States Supreme Court's interpretation of federal law. *See* U.S. Const. art. VI, cl. 2. Yet, the majority opinion in *Venegas* acknowledged that the State of California is not liable for its counties' tortious or unlawful acts, but dismissed the information as unimportant. 32 Cal.4th at 836–38, 11 Cal.Rptr.3d 692, 87 P.3d 1. As a matter of federal law, this Court finds that California's lack of liability for county torts is dispositive, and rejects the *Venegas* opinion's contrary holding. *See Streit,* 236 F.3d at 567 (noting that potential state liability is the "most important factor in identifying an arm of the state"). Accordingly, the Court finds that, under the correct federal framework, even after *Venegas,* California law reveals that sheriffs are county—not state—representatives.

The *Venegas* decision, if adopted by the federal courts, would essentially end federal civil rights litigation as we know it. The California court insisted that "[i]mmunizing these persons when actually engaged in [law enforcement] activities would not violate *Monell*'s broad refusal to find all local agencies immune from suit under section 1983" because "[o]ther torts or civil rights violations by these and other local officers might well be deemed acts committed by county agents." 32 Cal.4th at 838, 11 Cal.Rptr.3d 692, 87 P.3d 1. The

Court, however, is not clear how such lines could be drawn, when in a prior breath the state supreme court asserted that the immunity extended to "training staff and developing policy involving such [law enforcement] matters."[1] *Id.* at 838, 11 Cal. Rptr.3d 692, 87 P.3d 1. *Monell* already limits county liability to official policies, practices, and customs; the *Venegas* logic would appear to extend immunity to almost all of a sheriff's activity, including his management and administration duties. Indeed, the California Court of Appeal is already applying *Venegas* in this manner. *See Bougere v. County of Los Angeles,* 141 Cal.App.4th 237, 241, 45 Cal.Rptr.3d 711 (App.Ct.2006) (holding that "in setting and implementing policies and procedures pertaining to the placement of inmates at the county jail, the Sheriff was performing a law enforcement function on behalf of the state and is therefore immune from section 1983 liability").

There are practical as well as legal reasons for the California Supreme Court to reconsider *Venegas.* A State that claims Eleventh Amendment immunity for county officials may well reap what it sows. If sheriffs and their departments are state actors, then by all logic the state, not the county, should absorb the liability relating to these cases. In California, public entities[2] are often responsible through respondeat superior liability for actions which could otherwise be charged as federal con-

---

1. Moreover, even if the Court accepted that county sheriffs were entitled to immunity for their "law enforcement duties," as claimed by the California Supreme Court, the instant case is distinguishable. *Venegas* involved a claim by a couple that the Los Angeles County Sheriff and his Department performed an unreasonable search of their home and vehicle. Searching a car and home as part of a criminal investigation is unquestionably a law enforcement activity. In contrast, administering medical care to inmate-patients already in custody "involve[s] jail oversight and management, not law enforcement." *Clemmons v.*

*City of Long Beach,* No. CV 05–05525, 2006 WL 4599674, at *5 (C.D.Cal. July 25, 2006) (finding *Venegas* to be distinguishable in a federal civil rights case involving claims of unreasonable search and seizure and false imprisonment in a county jail).

2. " 'Public Entity' includes the State, the Regents of the University of California, a county, district, public authority, public agency, and any other political subdivision or public corporation in the State." Cal. Gov.Code § 811.2

stitutional violations. There are *many* such cases. For example, as relevant here, "a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." Cal. Gov.Code § 845.6. Similarly, "as an employer a [public entity], may incur liability for assault and battery committed by a police officer acting within the course and scope of his employment." *City of Los Angeles v. Super. Court*, 33 Cal.App.3d 778, 782, 109 Cal.Rptr. 365 (App.Ct.1973); *see also* Cal. Gov.Code § 815.2(a) ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."). Indeed, if *Venegas* is correct, then the Court wonders whether the wrong lawyers are representing Defendant in this matter, for it would seem that the Sheriff is entitled to a defense paid for and selected by the State of California.

Because *Venegas* misapplied federal law, the Court declines to follow its holding and finds instead that Plaintiffs' claims are not barred by the Eleventh Amendment. In so holding, the Court urges the California Supreme Court to reconsider *Venegas* to conform with the federal standard.

### C. Denial of Medical Care as Constitutional Violation

■ Defendant argues that Plaintiffs' complaint must be dismissed because medical malpractice does not violate the Constitution. (Mot. 7.) True enough, but "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In this case, Plaintiffs allege that Smith suffered from a serious respiratory condition for which he needed treatment, that Defendant was aware of Smith's condition and the need for the medication but denied it anyway, and that as a result Smith died. Taking the allegations in the light most favorable to Plaintiffs, they have stated a claim for an Eighth Amendment violation.

### D. Duplicative Claims

■ Defendant seeks to dismiss either Count 4 or 5 on the ground that they are duplicative. While both Causes of Action are predicated upon a theory of *Monell* liability, Count 4 alleges an unconstitutional custom of failing to properly train employees as to providing medical care, and Count 5 alleges that Defendant actively promulgated and condoned a policy of denying medical care. These two theories are not the same. *Compare Blankenhorn v. City of Orange*, 485 F.3d 463, 484–85 (9th Cir.2007) (discussing failure to train theory) *with Gibson v. County of Washoe*, 290 F.3d 1175, 1187–89 (9th Cir.2002) (discussing a *Monell* claim involving an affirmative policy of providing unconstitutional medical care). Accordingly, both Causes of Action may stand.

### IV. CONCLUSION

Based on the foregoing analysis, the motion is DENIED.

IT IS SO ORDERED.