**Michael McGANN**

v.

**Michael CUNNINGHAM, et al.**

**No. CIV.03–1090JM.**

United States District Court,
D. New Hampshire.

April 30, 2004.

Jeffry A. Schapira, Schapira Professional Association, Manchester, NH, for Plaintiff.

Andrew B. Livernois, NH Attorney General's Office, Concord, NH, for Defendants.

### ORDER

MUIRHEAD, United States Magistrate Judge.

Michael McGann brought this civil rights action against Michael Cunningham, Jane Coplan, Cynthia Crompton, the New Hampshire Department of Corrections and thirty John Doe defendants. McGann alleges in his complaint (document no. 1) that the defendants failed to properly credit him for "good time" he earned during his incarceration in the state prison, which resulted in his being held for approximately six months longer than his maximum sentence in violation of the United States Constitution and state law. McGann seeks compensatory and punitive damages.

Defendants have filed an answer to the complaint (document no. 2) denying certain of McGann's factual allegations and conclusions. Defendants' answer also asserts a general denial as well as affirmative defenses based on "all applicable immunities, including but not limited to sovereign immunity, qualified immunity, discretionary function immunity, official immunity, and 11th Amendment immunity," the doctrines of release, waiver, estoppel, res judicata, collateral estoppel, the statute of limitations, the doctrine of laches, a bar under the Prison Litigation Reform Act, and New Hampshire's statutory limitations on damages.

Pursuant to the Parties' Joint Discovery Plan (document no. 4), both parties have filed motions for partial summary judgment (document nos. 5 & 6). Both plaintiff and defendants argue that the question of the preclusive effect, or lack thereof, of an order issued in the state court on February 4, 1998 regarding the calculation of McGann's maximum release date, is a decisive issue in this case. For the reasons discussed herein, both of the motions seeking partial summary judgment are denied.

### Standard of Review

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Lehman v. Prudential Ins. Co. of Am.*, 74 F.3d 323, 327 (1st Cir.1996). A genuine issue is one

"that properly can be resolved only by a finder of fact because [it] ... may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is one that affects the outcome of the suit. *See id.* at 248, 106 S.Ct. 2505.

"Summary judgment is a procedure that involves shifting burdens between the moving and the nonmoving parties." *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993). The moving party bears the initial burden of establishing that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. *Id.* at 324, 106 S.Ct. 2548. Evidence that is "merely colorable, or is not significantly probative" will not preclude summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citation omitted); *see also, LeBlanc*, 6 F.3d at 842 ("the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party.").

On a motion for summary judgment, the court construes the record in the light most favorable to the non-moving party, resolving all inferences in its favor, and determines whether the moving party is entitled to judgment as a matter of law. *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir.2002). In this case, both parties have moved for summary judgment. "Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to deter-mine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Group, Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir.2001). The court does not credit "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). Applying this standard, the facts are recited below.

### *Background Facts*

On December 22, 1986, the plaintiff began serving a sentence of two to four years at the New Hampshire State Prison ("NHSP"). The plaintiff alleges that on December 22, 1988, he began serving a consecutive four to fifteen year sentence at the NHSP. During his second sentence, McGann became concerned that the NHSP employees were calculating his good time credits incorrectly, and that he was being denied credits to which he was entitled. Unable to resolve the dispute by communicating with NHSP officials, McGann filed a petition for a writ of habeas corpus in the state Superior Court. After a hearing on his petition, Superior Court Judge Manias issued an Order on February 4, 1998 denying McGann's petition. In that Order, Judge Manias found that McGann had started serving his first sentence on December 22, 1986, and that he started serving his second sentence on December 22, 1988.[1] Judge Manias further found that as of February 4, 1998, McGann had earned good time credit that reduced his maximum release date on his second sentence from fifteen years, to thirteen years, two months, and twenty days, and that accordingly, McGann's maximum release date

---

1. Defendants allege in their answer that plaintiff began serving his second sentence on December 29, 1988.

was in March of 2002.[2] Judge Manias also noted that this maximum release date was subject to further reduction if McGann earned additional good time credit against his maximum sentence.

McGann now asserts that nothing occurred after February 4, 1998 which would disentitle him to additional earned good time. McGann asserts that the additional good time he earned reduced his maximum sentence by 186 days, relying on the formula utilized by Judge Manias in his order.[3] The defendants generally deny this assertion in their answer, but do not cite or establish any facts that demonstrate that McGann was not entitled to this additional good time or any facts supporting a finding that his additional earned good time was denied based on McGann's conduct.[4]

After Judge Manias denied his Superior Court petition for a writ of habeas corpus, McGann appealed the denial to the New Hampshire Supreme Court. There is no indication that the State appealed or cross-appealed on the issue of the calculation of McGann's maximum release date. The New Hampshire Supreme Court summarily affirmed Judge Manias' order on February 23, 1999, stating: "We find no error in the superior court's calculations of credit regarding the second sentence of four to fifteen years. We reject [McGann's] challenge to the warden's method of calculating meritorious service credit ... we do not disagree with the result below." *See Petition of Michael B. McGann*, No. 98–

2. Adding thirteen years, two months and twenty days to the start date of the second sentence, as found by Judge Manias, his maximum release date, at the time Judge Manias issued his order, was March 14, 2002 by my calculations. The parties seem to agree that the maximum release date as ordered by Judge Manias fell on March 16, 2002.

3. The formula utilized by the Judge as well as his factual findings regarding McGann's release date were adopted from a Memorandum submitted by defendant Michael Cunningham in the state court habeas proceeding which has been attached to Defendant's Motion for Partial Summary Judgment as Exhibit D. In that Memorandum, Cunningham asserts that as of February 1998, McGann's maximum release date should have been March 16, 2002, and that his ultimate release date would be determined by "[s]ubtract[ing] 5 days/month thereafter for each month served with meritorious conduct." Defendants now argue that because the State was represented in that proceeding by an Assistant Hillsborough County Attorney rather than by the Attorney General's office, and because the calculation of good time credits was one of several issues raised in the habeas petition, that it was "highly unlikely that the Assistant County Attorney assigned to defend the state's position in the case focused significant amounts of attention on the question." And further, de-

fendants contend that because the Assistant County Attorney would quickly surmise upon reviewing the case that McGann's request for habeas relief would not be granted "there was no incentive for the State to focus extensive resources on litigating the question of *exactly* when Plaintiff would reach his maximum release date." Even if such an argument—that this Court should disregard a court order because the attorney litigating on Mr. Cunningham's behalf had better things to do with her time than worry about Mr. McGann's maximum release date—did not strain credulity, the defendant's assertion is belied by the fact that the Assistant County Attorney submitted a memorandum of law to the Superior Court after the habeas hearing dealing specifically with this issue, and prepared a detailed calculation sheet to guide the court's decision on the issue of McGann's maximum release date. There does not appear to have been any objection from the State when the Superior Court adopted its calculations in its order.

4. On the current record, it is impossible for this Court to make its own determination of how much good time McGann may have earned after February 4, 1998, because neither party has provided the Court with facts sufficient to determine how much of the time between February 4, 1998 and McGann's release in March of 2002 McGann was actually incarcerated and not released on parole.

332 (N.H.Sup.Ct. Feb. 23, 1999) (order summarily affirming lower court decision).

Plaintiff now raises four claims arising from the 186 days of improper incarceration he alleges he suffered. First, McGann claims that the defendants violated his Fourteenth Amendment right not to be deprived of his liberty without the due process of law. Second, McGann claims that his extended incarceration constituted cruel and unusual punishment in violation of the Eighth Amendment. McGann further alleges state law claims of false imprisonment and negligence.

### Discussion

In the Joint Discovery Plan filed in this matter (document no. 4), the parties agreed to file initial motions seeking partial summary judgment addressing the issue of whether or not Judge Manias' February 4, 1998 order should be given preclusive effect in this case under the doctrine of collateral estoppel, or whether this Court should address the sentence calculation and maximum release date decision anew. Both parties have now filed motions for partial summary judgment on the topic of issue preclusion. Neither party has filed an objection or other response to its opponent's filing.

The plaintiff's motion argues that the Superior Court's February 4, 1998 order should be given preclusive effect under the doctrine of collateral estoppel, that the Superior Court's order cannot be reviewed because the *Rooker–Feldman* doctrine

precludes the federal court from relitigating a state court judgment, and because the Superior Court decision is entitled to full faith and credit in this court. The defendants argue that the Superior Court's decision does not have preclusive effect and that the doctrine of collateral estoppel does not apply to prevent the reexamination of plaintiff's release date by this court because there is a lack of identity of the parties between the two actions, the defendants in this case did not have a full and fair opportunity to litigate this issue, and the factual findings of the state courts were not essential to the court's holding. The defendants also argue that the public interest would be adversely affected "if the State of New Hampshire were required to pay out large sums of money to compensate Plaintiff for the time that he was incarcerated," and that it was not foreseeable at the time of the original habeas corpus petition that McGann would eventually be incarcerated past his maximum release date or that he would file a lawsuit as a result.[5]

After careful consideration of the pleadings submitted, I find that neither party has properly identified the issue before this Court in this case. The principle thrust of plaintiff's complaint is that he was wrongly detained for 186 days after his maximum release date, as determined by a final judgment of the New Hampshire courts. The parties agree that on February 4, 1998, Judge Manias issued an order making specific factual findings regarding

---

5. Although, as explained in the body of this order, I decline to consider the collateral estoppel arguments at this time, I must note that I fail to understand how the foreseeability of holding an inmate in prison past his maximum release date has any relevance at all to the determination of whether the doctrine of collateral estoppel applies in this case, or whether he is entitled to damages for the detention he allegedly served in excess of

his maximum sentence. Likewise, the defendants' argument pertaining to harm to the public interest in having to compensate plaintiff for his damages is also misplaced. The public interest is always affected, at least indirectly, when the state is required to pay a large money judgment. But that is not the standard for determining whether a civil rights lawsuit should be allowed to proceed.

the maximum release date for McGann as of that date, as well as the potential for McGann to earn additional good time credits against his maximum release date. Neither party disputes that this matter was appealed to the New Hampshire Supreme Court, which affirmed Judge Manias' order, finding specifically that Manias had not erred in his findings.

█ The question in this case, therefore, is whether or not the final Superior Court order interpreting state law and rendering a decision based on state law about the specific terms of a state sentence creates a liberty interest in the court-mandated release date that cannot be taken from the plaintiff without due process of law. Whether or not this Court would have to give preclusive affect to the State Court decision is not relevant if the final order of the Supreme Court in this case created a liberty interest in McGann's maximum release date as determined by the February 4, 1998 order. Any continued detention after the state has lost its lawful authority to hold a prisoner deprives him of a liberty interest in freedom from restraint that is protected from unlawful state deprivation by the Due Process Clause of the Fourteenth Amendment. *Slone v. Herman*, 983 F.2d 107, 110 (8th Cir.1993).

█ "[W]hen a prisoner is still under confinement the due process clause itself does not convey a liberty interest in the conditions or degree of confinement *as long as these are 'within the sentence imposed'* and are 'not otherwise violative of due process.'" *Lanier v. Fair*, 876 F.2d 243, 246 (1st Cir.1989) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) (overruled on other grounds)) (emphasis added). A final state court order setting a release date based on a state statute creates such a liberty interest in that release date. *See Hewitt*, 459 U.S. at 471–72, 103 S.Ct. 864 (state-created

law can give rise to liberty interests protected by the Due Process clause); *Walters v. Grossheim*, 990 F.2d 381, 384 (8th Cir.1993); *Slone*, 983 F.2d at 108. Because McGann possessed a state-created liberty interest entitled to Due Process protection, the state could not take away that liberty interest without providing him with due process. *Dominique v. Weld*, 73 F.3d 1156, 1158 (1st Cir.1996); *See also Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (state action restraining an individual's liberty in excess of a sentence gives rise to the protection of the Due Process Clause of its own force).

█ The construction of state statutes is a state question, "the final decision of which rests with the courts of the state" and a federal court is not able to "revise the decisions of the state courts on questions of state law." *Hamm v. Latessa*, 72 F.3d 947, 954 (1st Cir.1995) (quoting *Hebert v. Louisiana*, 272 U.S. 312, 316, 47 S.Ct. 103, 71 L.Ed. 270 (1926)). Any effort on the part of the federal court to reexamine the state court's determination of state law, rather than determine whether the defendants' application of the state court's order violated due process, would be undertaken in error. *Hamm*, 72 F.3d at 955.

█ "A reasonably competent official should know that it is not lawful to disobey a final and nonappealable court order." *Slone v. Herman*, 983 F.2d 107 (8th Cir. 1993). That is precisely what the defendants are alleged to have done here. The defendants' motion for partial summary judgment apparently concedes that they did not follow the state court's sentencing order, because they believed it to be in error. The state, however, has had its opportunity to litigate issues related to Judge Manias' alleged error in the state courts. Presumably because they were the prevailing party in the Superior Court habeas litigation, the state did not contest

**156**

Judge Manias' findings on appeal. Indeed, as those findings were based on the state's own memorandum, they might have been hard-pressed to argue on appeal that they were in error. Nevertheless, the opportunity to appeal that decision has come and gone, and the state defendants cannot now claim that the court's order did not have to be followed because they disagreed with it. Defendants argument that this Court should reexamine the state court's decision because it was wrong forces the federal district court to serve as an appellate court to the state courts, which it is without jurisdiction to do. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Hill v. Town of Conway,* 193 F.3d 33, 34–35 (1st Cir.1999) (a United States District Court does not have jurisdiction to review the decisions of state courts and agencies).

McGann had a liberty interest created by the state court's February 4, 1998 decision as affirmed by the New Hampshire Supreme Court on February 23, 1999. The defendants were not entitled to deprive plaintiff of that interest without providing him with due process of law. There is no indication in any of the pleadings that any due process protections were afforded to McGann prior to his being held beyond the maximum release date determined by the state courts. Because the summary judgment motions do not address this issue, but instead address the irrelevant issue of whether or not this court is bound by the state court's factual determination of McGann's maximum release date, both motions for partial summary judgment are denied.

**SO ORDERED.**